**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| MINELAB ELECTRONICS PTY LTD,<br><br>*Plaintiff*,<br><br>v.<br><br>NOKTA MUHENDISLIK AS and AMERICAN DETECTOR DISTRIBUTORS,<br><br>*Defendants*. | **Case No.** 2:26-cv-00970<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Minelab Electronics Pty Ltd ("Minelab"), for its Original Complaint for Patent Infringement against Defendants Nokta Muhendislik AS ("Nokta") and American Detector Distributors ("American Detector"), alleges as follows:

## NATURE OF THE ACTION AND PARTIES

1. Minelab is an Australian company with a principal place of business at Technology Park, 2 Second Avenue, Mawson Lakes, South Australia 5095, Australia.

2. Upon information and belief, Nokta is a Turkish entity, also doing business as Nokta Detectors, having a place of business at Emek Mah. Sakiz Sok. No:4/1, Sancaktepe 34785, Istanbul, Turkey.

3. Upon information and belief, American Detector is a Texas limited liability company having a place of business at 6500 Iron Horse Boulevard, North Richland Hills, Texas 76180.

## JURISDICTION AND VENUE

4. This is a civil action for patent infringement of United States Patent Nos.

8,106,770, 9,547,065, and 11,953,642 (collectively, the "Asserted Patents") arising under the Patent Act of the United States, 35 U.S.C. § 1 *et seq.* This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Nokta because Nokta is subject to this Court's specific and/or general personal jurisdiction pursuant to due process and/or the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.

6. Upon information and belief, Nokta purposefully avails itself of the privilege of conducting business in Texas and in this District by, among other things: (i) transacting business within Texas and entering into contracts to supply goods within Texas that give rise to the infringement alleged herein; (ii) selling and offering for sale products, including at least the infringing Legend 2 and Magnetar 9000 (the "Accused Products"), to United States distributors and dealers with the knowledge and intention that those products will be resold to and used by customers throughout the United States, including in Texas and in this District; (iii) committing acts outside Texas that induce acts of direct infringement within Texas and this District; (iv) establishing and maintaining a network of authorized dealers in Texas and in this District, including East Texas Metal Detectors, located at 1495 FM 49, Gilmer, Texas 75644, in Upshur County, which is within this District; (v) directing customers in Texas and this District to purchase the Accused Products through the "Where to Buy" or dealer-locator features of its website, which identify East Texas Metal Detectors as a location at which the Accused Products may be purchased and maintain a dedicated dealer page for that dealer at https://www.noktadetectors.com/dealer/east-texas-metal-detectors/; (vi) regularly soliciting business in Texas through its website and marketing materials; and (vii) deriving substantial revenue from goods sold and services rendered in Texas. Minelab's causes of action arise

directly out of Nokta's contacts with Texas and with this District. The exercise of personal jurisdiction over Nokta is therefore reasonable and fair and comports with traditional notions of fair play and substantial justice.

7. American Detector is a United States distributor of Nokta's metal detectors, including, upon information and belief, the Accused Products, and offers for sale and sells those products to a nationwide network of dealers, including dealers located in Texas and this District. *See, e.g.*, Exhibit G, https://detectornet.com/nokta/ (American Detector: "Premier Wholesale Suppliers of Nokta Detection Technologies"; "Supplying US Dealers and Retail Shops").

8. This Court has personal jurisdiction over American Detector. Upon information and belief, American Detector is organized under the laws of the State of Texas and maintains its principal place of business in Texas, and American Detector is therefore at home in and subject to the general personal jurisdiction of the courts of this State. American Detector is also subject to this Court's specific personal jurisdiction pursuant to due process and the Texas Long-Arm Statute, Tex. Civ. Prac. & Rem. Code § 17.042.

9. Upon information and belief, American Detector purposefully avails itself of the privilege of conducting business in Texas and in this District by, among other things: (i) selling and offering for sale the Accused Products within Texas and within this District; (ii) shipping the Accused Products to dealers and customers located in Texas and in this District, including East Texas Metal Detectors, located at 1495 FM 49, Gilmer, Texas 75644, in Upshur County, which is within this District; (iii) establishing and maintaining a network of authorized dealers in Texas and in this District, which American Detector identifies to the public through the "Find a Dealer" feature of its website located at https://detectornet.com/resellers-directory/, under the heading "American Detector Distributors Vendor Directory"; and (iv) deriving substantial revenue from

goods sold and services rendered in Texas and in this District. Minelab's causes of action against American Detector arise directly out of those contacts.

10. Venue is proper in this District under 28 U.S.C. § 1391(c)(3). Nokta is a foreign entity that is not a resident of the United States. A defendant not resident in the United States may be sued in any judicial district. Venue in this District is therefore proper as to Nokta.

11. Venue is proper in this District as to American Detector under 28 U.S.C. §§ 1391(b) and 1400(b). Upon information and belief, American Detector has committed acts of infringement in this District by selling, offering for sale, and shipping the Accused Products into this District, and American Detector has a regular and established place of business in this District, at least through its relationship with its network of dealers, at least one of which is located in this District.

**THE ASSERTED PATENTS**

12. On April 9, 2024, the United States Patent and Trademark Office (USPTO) duly and legally issued U.S. Patent No. 11,953,642 (the "'642 Patent"), entitled "Metal Detector." The named inventor is Cosmo Luppino. A true and correct copy of the '642 Patent is attached as Exhibit A and incorporated herein by reference.

13. Minelab owns, by assignment, all right, title, and interest in and to the '642 Patent, including the exclusive right to sue for and recover damages for past, present, and future infringement. The '642 Patent was duly issued pursuant to Title 35 of the United States Code and is valid and enforceable.

14. On January 31, 2012, the USPTO duly and legally issued U.S. Patent No. 8,106,770 (the "'770 Patent"), entitled "Metal Detector with Improved Magnetic Soil Response Cancellation." The named inventor is Bruce Halcro Candy. A true and correct copy of the '770 Patent is attached as Exhibit B and incorporated herein by reference.

15. Minelab owns, by assignment, all right, title, and interest in and to the ’770 Patent, including the exclusive right to sue for and recover damages for past, present, and future infringement. The ’770 Patent was duly issued pursuant to Title 35 of the United States Code and is valid and enforceable.

16. On January 17, 2017, the USPTO duly and legally issued U.S. Patent No. 9,547,065 (the “’065 Patent”), entitled “Method for Detecting Fast Time Constant Targets Using a Metal Detector.” The named inventor is Bruce Halcro Candy. A true and correct copy of the ’065 Patent is attached as Exhibit C and incorporated herein by reference.

17. Minelab owns, by assignment, all right, title, and interest in and to the ’065 Patent, including the exclusive right to sue for and recover damages for past, present, and future infringement. The ’065 Patent was duly issued pursuant to Title 35 of the United States Code and is valid and enforceable.

18. Minelab has complied with the marking requirements of 35 U.S.C. § 287(a) with respect to each of the Asserted Patents at all times relevant to this action. Minelab marks its patented products, or their packaging, with the applicable patent numbers, or by affixing to those products the word “patent” or the abbreviation “pat.” together with an address of a posting on the internet, accessible to the public without charge, that associates the patented articles with the numbers of the Asserted Patents. For example, Minelab has virtually marked certain of its products with the Asserted Patents by way of providing on those products the URL to Minelab’s patent marking web page (at least those products being “Minelab’s Patented Products”). *See, e.g.*, Exhibit D, https://www.minelab.com/patents/.

**THE PARTIES**

19. Minelab is a world leader in the design, development, and manufacture of hand-held metal detectors. Over several decades, Minelab has invested substantially in research and

development directed to metal detection technology, and it protects the resulting innovations through a portfolio of United States patents. Minelab considers its patented technologies to be among its most valuable assets.

20. Minelab's patented technologies are embodied in its commercial hand-held metal detectors, which Minelab sells in the United States and which represent the product of substantial and sustained investment in research and development.

21. Minelab's Patented Products include, for example, its GPX 6000, GPZ 7000, GPZ 8000, SDC 2300, Equinox 700, Equinox 900, and Manticore products. In particular, Minelab's products implementing the soil-response cancellation technology claimed in the '770 Patent include the GPZ 7000, GPZ 8000, GPX 6000, and SDC 2300. These products employ demodulation functions that implement the soil-response cancellation techniques claimed in the '770 Patent.

22. Nokta is a direct competitor of Minelab in the market for hand-held metal detectors. Nokta makes, uses, imports, offers for sale, and sells hand-held metal detectors in the United States that practice Minelab's patented inventions without authorization. The Accused Products compete directly with one or more of Minelab's own detectors and/or Patented Products, and Nokta through the Accused Products has infringed and continues to infringe the Asserted Patents.

23. Upon information and belief, American Detector is one of Nokta's primary United States distributors for one or more of the Accused Products. American Detector purchases or otherwise obtains one or more of the Accused Products from Nokta and offers to sell and sells those products within the United States, including to the nationwide network of dealers that American Detector identifies to the public on the "Find a Dealer" page of its website. *See, e.g.*,

Exhibit G, https://detectornet.com/nokta/ (American Detector: "Premier Wholesale Suppliers of Nokta Detection Technologies"; "Supplying US Dealers and Retail Shops"). American Detector thereby places one or more of the Accused Products into the United States market, where they compete directly with Minelab's own detectors, including Minelab's Patented Products.

24. Minelab and Nokta compete directly in the market for metal detectors, including detectors incorporating the patented technologies. Upon information and belief, sales of the Accused Products by Nokta and American Detector have diverted, and will continue to divert, sales from Minelab's competing products, including the GPZ 7000, GPZ 8000, GPX 6000, and SDC 2300. Minelab has the manufacturing and marketing capacity to supply those products and to make at least some of the sales diverted by the infringement. As a direct and proximate result of Defendants' infringement, Minelab has suffered, and continues to suffer, lost profits, including lost sales and price erosion, in amounts to be established through discovery and at trial. In addition to, or alternatively to, its claim for lost profits, Minelab is entitled to damages in an amount no less than a reasonable royalty.

25. Nokta's infringement also inflicts harm on Minelab that cannot be fully compensated by money damages. By misappropriating Minelab's patented technologies, Nokta erodes Minelab's exclusivity in the very features that differentiate Minelab's detectors in the marketplace, deprives Minelab of the benefit of its research and development investment, erodes Minelab's price structure and market share, and damages Minelab's goodwill and reputation as the innovator in hand-held metal detection. Minelab is thus suffering irreparable injury for which there is no adequate remedy at law, and that injury will continue unless Nokta's infringement is enjoined.

26. Pursuant to 35 U.S.C. § 287, the filing of this action for infringement constitutes

the latest date of notice of infringement.

27. Nokta had actual pre-suit knowledge of at least the ’642 Patent. On or about June 23, 2026, Minelab notified Nokta of Minelab’s ownership of the ’642 Patent and of Nokta’s infringement of that patent. The letter enclosed a copy of the ’642 Patent and identified the Legend 2 as infringing the ’642 Patent. On or about August 3, 2026, counsel for Minelab further identified the Magnetar 9000 as infringing the ’642 Patent.

28. Based on communications with Minelab, Nokta also had actual pre-suit knowledge of at least the ’065 Patent.

29. Nokta and American Detector each had constructive pre-suit knowledge of the Asserted Patents. Nokta and American Detector have been at least constructively aware of the Asserted Patents by virtue of Minelab’s virtual marking and patent marking web page at https://www.minelab.com/patents/, which associates Minelab’s Patented Products with the numbers of the Asserted Patents. In addition, American Detector distributes and sells one or more of the Accused Products in direct competition with Minelab’s Patented Products, and through a reasonable investigation into those competing Minelab products, American Detector would have discovered the Asserted Patents. At the latest, Nokta and American Detector were actually aware of the Asserted Patents by the time of this action.

30. Nokta has continued to make, use, import, offer for sale, and sell the Legend 2 and the Magnetar 9000 in the United States despite being on notice of the Asserted Patents, notwithstanding Minelab’s pre-suit demands.

31. American Detector has continued to import, offer for sale, and sell the Legend 2 and the Magnetar 9000 in the United States despite being on notice of the Asserted Patents.

## COUNT I: DIRECT INFRINGEMENT OF THE ’642 PATENT

32. Minelab realleges and incorporates by reference the preceding paragraphs as if

fully set forth herein.

33. As more fully alleged in the paragraphs that follow, Nokta has directly infringed and continues to infringe at least claim 1 of the ’642 Patent, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a), by making, using, offering to sell, and selling within the United States, and importing into the United States, metal detectors that are covered by the claims of the ’642 Patent.

34. For example, Nokta has offered at least two different versions of metal detectors, including the Legend 2 and the Magnetar 9000, that directly infringe at least claim 1 of the ’642 Patent. *See* Exhibit E, https://www.noktadetectors.com/metal-detector/the-legend-2/; Exhibit F, https://magnetar.noktadetectors.com/.

35. The exemplary chart below reproduces the language of independent claim 1 of the ’642 Patent and shows that the Legend 2 infringes at least that claim of the ’642 Patent:

| Claim 1 of the ’642 Patent | Infringement by the Nokta Legend 2[1] |
|---|---|
| 1. A body of a hand-held metal detector, comprising:[2] |  |

[1] Images are taken from Nokta’s website (Exhibit E) and from a disassembled Legend 2 and are annotated.

[2] Minelab does not concede that the preamble of claim 1 limits the claim. *See Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358 (Fed. Cir. 2010) (“A preamble is not regarded as limiting . . . when the claim body describes a structurally complete invention.”) (internal quotes and citation omitted). Regardless, Minelab herein presents evidence establishing the Legend 2 meets the language of the preamble.

| Claim 1 of the ’642 Patent | Infringement by the Nokta Legend 2[1] |
|---|---|
| an elongated body with a first and second end; and |   |
| a first connecting structure moulded directly onto the elongated body at the first end through an injection moulding process; |     |

| Claim 1 of the ’642 Patent | Infringement by the Nokta Legend 2[1] |
|---|---|
| wherein the connecting structure comprises an engaging portion configured to engage at least one attachment of the hand-held metal detector, |     |
| such that the at least one attachment is supported by the elongated body through the connecting structure moulded directly onto the elongated body. |   |

36. The exemplary chart below reproduces the language of independent claim 1 of the ’642 Patent and shows that the Magnetar 9000 infringes at least that claim of the ’642 Patent:

| Claim 1 of the '642 Patent | Infringement by the Nokta Magnetar 9000[3] |
|---|---|
| 1. A body of a hand-held metal detector, comprising:[4] |  |
| an elongated body with a first and second end; and |   |
| a first connecting structure moulded directly onto the elongated body at the first end through an injection moulding process; |   |

[3] Images are taken from Nokta's website (Exhibit F) and from a disassembled Magnetar 9000 and are annotated.

[4] Minelab does not concede that the preamble of claim 1 limits the claim. *See Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358 (Fed. Cir. 2010) ("A preamble is not regarded as limiting . . . when the claim body describes a structurally complete invention.") (internal quotes and citation omitted). Regardless, Minelab herein presents evidence establishing the Magnetar 9000 meets the language of the preamble.

| Claim 1 of the '642 Patent | Infringement by the Nokta Magnetar 9000[3] |
|---|---|
| |     |

| Claim 1 of the '642 Patent | Infringement by the Nokta Magnetar 9000[3] |
|---|---|
| wherein the connecting structure comprises an engaging portion configured to engage at least one attachment of the hand-held metal detector, |  |
| such that the at least one attachment is supported by the elongated body through the connecting structure moulded directly onto the elongated body. |  |

37. Nokta therefore directly infringes the '642 Patent under 35 U.S.C. § 271(a) at least as a result of offering to sell, and selling within the United States, and importing into the United States the Legend 2 and Magnetar 9000.

38. American Detector has directly infringed and continues to directly infringe at least claim 1 of the '642 Patent, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a), by one or more of using, offering to sell, and selling within the United States, and importing into the United States, the Legend 2 and the Magnetar 9000. *See, e.g.*, Exhibit G, https://detectornet.com/nokta/ (marketing Legend 2 and Magnetar 9000).

39. Upon information and belief, American Detector acquires those products from

Nokta and sells, offers to sell, and ships them to dealers and customers in the United States, including in Texas and in this District.

40. As set forth above, the Legend 2 and the Magnetar 9000 meet each and every limitation of at least claim 1 of the ’642 Patent, and American Detector’s sales, offers for sale, and importation of those products therefore infringe.

41. Minelab has complied with the marking requirements of 35 U.S.C. § 287(a) with respect to the ’642 Patent at all times relevant to this action. Minelab maintains a posting on the internet, accessible to the public without charge, that associates Minelab’s Patented Products with the number of the ’642 Patent. Minelab marks those patented articles, or their packaging, with the word “patent” or the abbreviation “pat.” together with the address of that patent marking web page. *See, e.g.*, Exhibit D, https://www.minelab.com/patents/.

42. Nokta and American Detector were therefore on notice of the ’642 Patent at least by virtue of Minelab’s virtual marking and patent marking web page.

43. Alternatively, or in addition to Nokta’s constructive awareness of the ’642 Patent due to Minelab’s virtual marking and patent marking web page, Nokta was actually aware of the ’642 Patent no later than on or about June 23, 2026.

44. At the latest, Nokta and American Detector were actually aware of the ’642 Patent by the time of this action.

45. In view of Nokta’s and American Detector’s awareness of the ’642 Patent and Minelab’s infringement allegations against Nokta and American Detector as to the ’642 Patent, Nokta’s and American Detector’s infringement has been and continues to be deliberate and willful, and thus Nokta and American Detector are liable for willful infringement as to the ’642 Patent.

46. Pursuant to 35 U.S.C. § 284, Minelab is entitled to compensation for said infringements, including with respect to lost profits and in no event less than a reasonable royalty, for Nokta's and American Detector's direct infringement of the '642 Patent, together with pre- and post-judgment interest and costs as fixed by the Court.

47. Due to Nokta's and American Detector's willful infringement as alleged in this Count, Minelab is entitled to enhanced damages under 35 U.S.C. § 284.

**COUNT II: INDUCED INFRINGEMENT OF THE '642 PATENT**

48. Minelab realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

49. In addition, and in the alternative to Minelab's allegations of direct infringement of at least claim 1 of the '642 Patent, and without limiting anything alleged in connection therewith, Minelab alleges that Nokta, by conduct more particularly alleged in the paragraphs that follow, has actively induced and continues to actively induce infringement, by its customers, of at least claim 1 of the '642 Patent.

50. The relevant direct infringement for purposes of this Count is the direct infringement committed by others, including Nokta's United States distributors, authorized dealers, retailers, and the end users of the Accused Products. Those parties directly infringe the '642 Patent, literally and/or under the doctrine of equivalents, by using, offering for sale, and selling the Legend 2 and the Magnetar 9000 in the United States, and by assembling the detector body with its armrest, grip, control module, and other attachments in the manner Nokta designs, instructs, and intends.

51. As set forth in Count I, the Legend 2 and the Magnetar 9000 meet each and every limitation of at least claim 1 of the '642 Patent, literally and/or under the doctrine of equivalents, and are therefore infringing.

52. As set forth in the following, Nokta actively induces that direct infringement in a number of ways, including without limitation by one or more of the following acts: (i) Nokta manufactures the Accused Products and sells and offers them for sale to its United States distributors and dealers, knowing and intending that those products will be resold to and used by customers in the United States; (ii) Nokta imports and distributes the Accused Products into the United States market; (iii) Nokta advertises and markets the Accused Products to United States consumers, including through its websites and product literature, and promotes the very features that practice the claimed invention; (iv) Nokta directs United States consumers where to purchase the Accused Products through the "Where to Buy" or dealer-locator features of its website, with knowledge that such purchase and subsequent use in the United States will constitute direct infringement; (v) Nokta supplies user manuals, assembly and installation instructions, product literature, and online support materials that instruct purchasers how to assemble and use the Accused Products, including how to mount the armrest and grip to the moulded connecting structures, in a manner that infringes; and (vi) Nokta sells and offers for sale replacement armrests and other attachments separately, instructing and enabling customers to engage those attachments with the moulded connecting structures of the detector body.

53. American Detector likewise actively induces and continues to actively induce that direct infringement, in violation of 35 U.S.C. § 271(b). Upon information and belief, American Detector: (i) sells and offers for sale the Accused Products to its network of United States dealers, knowing and intending that those dealers will resell the products to end users in the United States who will assemble and use them in the infringing manner; (ii) informs the public where to purchase the Accused Products in the United States through the "Find a Dealer" feature of its website, with knowledge that such purchase and subsequent use in the United States will

constitute direct infringement of the ’642 Patent; (iii) distributes and makes available Nokta’s user manuals, assembly and installation instructions, and product literature that instruct purchasers how to assemble and use the Accused Products in the infringing manner; and/or (iv) sells and offers for sale replacement armrests and other attachments that engage the moulded connecting structures of the detector body. Despite its knowledge of the ’642 Patent, American Detector continues to induce its dealers, end users, and others to use, sell, and offer for sale the Accused Products in the United States. In the alternative, American Detector has been willfully blind to the infringement it induces.

54. Minelab has complied with the marking requirements of 35 U.S.C. § 287(a) with respect to the ’642 Patent at all times relevant to this action. Minelab maintains a posting on the internet, accessible to the public without charge, that associates Minelab’s Patented Products with the number of the ’642 Patent. Minelab marks those patented articles, or their packaging, with the word “patent” or the abbreviation “pat.” together with the address of that patent marking web page. *See, e.g.*, Exhibit D, https://www.minelab.com/patents/.

55. Nokta and American Detector were therefore on notice of the ’642 Patent at least by virtue of Minelab’s virtual marking and patent marking web page.

56. Alternatively, or in addition to Nokta’s constructive awareness of the ’642 Patent due to Minelab’s virtual marking and patent marking web page, Nokta was actually aware of the ’642 Patent at least no later than on or about June 23, 2026.

57. At the latest, Nokta and American Detector were actually aware of the ’642 Patent by the time of this action.

58. Nokta has therefore known of the ’642 Patent since no later than the filing of this Complaint. Since that date, Nokta has known or should have known that the acts it induces its

distributors, dealers, and customers to perform constitute infringement of the ’642 Patent. Nokta has nevertheless continued, and continues, to perform the inducing acts described above with the specific intent that its distributors, dealers, and customers infringe the ’642 Patent, and with knowledge that their acts constitute infringement. In the alternative, Nokta has been willfully blind to the infringement it induces.

59. American Detector has likewise known of the ’642 Patent since no later than the filing of this Complaint. Since that date, American Detector has known or should have known that the acts it induces its dealers, end users, and others to perform constitute infringement of the ’642 Patent. American Detector has nevertheless continued, and continues, to perform the inducing acts described above with the specific intent that its dealers, end users, and others infringe the ’642 Patent, and with knowledge that their acts constitute infringement. In the alternative, American Detector has been willfully blind to the infringement it induces.

60. Pursuant to 35 U.S.C. § 284, Minelab is entitled to compensation for said infringements, including with respect to lost profits and in no event less than a reasonable royalty, for Nokta’s and American Detector’s induced infringement of the ’642 Patent, together with pre- and post-judgment interest and costs as fixed by the Court.

61. Due to Nokta’s and American Detector’s willful infringement as alleged in this Count, Minelab is entitled to enhanced damages under 35 U.S.C. § 284.

**COUNT III: CONTRIBUTORY INFRINGEMENT OF THE ’642 PATENT**

62. Minelab realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

63. In addition, and in the alternative to Minelab’s allegations of direct and induced infringement, Nokta has contributorily infringed and continues to contributorily infringe at least claim 1 of the ’642 Patent in violation of 35 U.S.C. § 271(c).

64. Upon information and belief, Nokta offers to sell and sells within the United States, and imports into the United States, the bodies, shafts, moulded connecting structures, armrests, grips, control modules, and related attachments of the Accused Products. Each of those items constitutes a component of a patented machine, manufacture, or combination, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention claimed in the ’642 Patent.

65. Nokta knowingly and intentionally advertises and sells the Accused Products and their components to its distributors, dealers, and customers with the expectation and intention that those parties will assemble and use detector bodies covered by at least claim 1 of the ’642 Patent. As such, Nokta is liable for contributory infringement under 35 U.S.C. § 271(c) of at least claim 1 of the ’642 Patent as these Accused Products are not capable of any substantial non-infringing uses and are instead especially made or adapted for use in the infringement of at least claim 1 of the ’642 Patent.

66. The accused components are not staple articles or commodities of commerce suitable for substantial non-infringing use. The moulded connecting structures of the Accused Products, and the armrests, grips, and control modules designed to engage them, are especially made and especially adapted for use in an infringement of the ’642 Patent, and have no substantial use other than in the infringing detector bodies. An armrest provided with slots shaped to slide along the rails of the Legend 2 armrest connecting structure, for example, has no substantial use apart from engaging that connecting structure in the infringing configuration.

67. American Detector likewise has contributorily infringed and continues to contributorily infringe at least claim 1 of the ’642 Patent in violation of 35 U.S.C. § 271(c). Upon information and belief, American Detector offers to sell and sells within the United States

the Accused Products and the components identified above, including the detector bodies, moulded connecting structures, armrests, grips, and control modules, knowing those components to be especially made or especially adapted for use in an infringement of the ’642 Patent and not to be staple articles or commodities of commerce suitable for substantial non-infringing use.

68. Minelab has complied with the marking requirements of 35 U.S.C. § 287(a) with respect to the ’642 Patent at all times relevant to this action. Minelab maintains a posting on the internet, accessible to the public without charge, that associates Minelab’s Patented Products with the number of the ’642 Patent. Minelab marks those patented articles, or their packaging, with the word “patent” or the abbreviation “pat.” together with the address of that patent marking web page. *See, e.g.*, Exhibit D, https://www.minelab.com/patents/.

69. Nokta and American Detector were therefore on notice of the ’642 Patent at least by virtue of Minelab’s virtual marking and patent marking web page.

70. Alternatively, or in addition to Nokta’s constructive awareness of the ’642 Patent due to Minelab’s virtual marking and patent marking web page, Nokta was actually aware of the ’642 Patent no later than on or about June 23, 2026.

71. At the latest, Nokta and American Detector were actually aware of the ’642 Patent by the time of this action.

72. Nokta and American Detector have therefore known since no later than the filing of this Complaint that the accused components are especially made or especially adapted for use in an infringement of the ’642 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use. The activities of each of Nokta and American Detector in infringing the ’642 Patent are thus deliberate and willful.

73. As a direct and proximate result of Nokta’s and American Detector’s contributory

infringement of the ’642 Patent, Minelab has been and continues to be damaged in an amount to be determined at trial, including with respect to lost profits and in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284.

74. Due to Nokta’s and American Detector’s willful infringement as alleged in this Count, Minelab is entitled to enhanced damages under 35 U.S.C. § 284.

**COUNT IV: DIRECT INFRINGEMENT OF THE ’770 PATENT**

75. Minelab realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

76. Nokta has infringed and continues to infringe at least claims 1 and 13 of the ’770 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by making, using, offering to sell, and selling within the United States, and importing into the United States, the Magnetar 9000, without authority from Minelab.

77. Claim 1 of the ’770 Patent recites a method for detecting a target in a soil. Nokta directly infringes by making, using, offering for sale, selling, and importing the Magnetar 9000, which is configured to perform, and does perform, each step of the claimed method as shown in the following paragraphs.

78. “**A method for detecting a target in a soil**”—The Magnetar 9000 is a hand-held metal detector designed, marketed, and used to detect metallic targets buried in soil. Nokta’s marketing materials for the Magnetar 9000 describe the product as a detector for locating targets in the ground, and its coil is designed and intended to transmit into the soil.




Exhibit F, https://magnetar.noktadetectors.com/.

79. “**generating a transmit signal, the transmit signal including at least three different frequency components, a relatively high frequency component, a relatively medium frequency component and a relatively low frequency component**”—The Magnetar 9000 applies a transmit signal to a transmit coil to produce a transmitted magnetic field to detect metal targets. A frequency-domain analysis of a transmit voltage waveform that the Magnetar 9000 applies to its transmit coil contains at least three different frequency components, a relatively high frequency component, a relatively medium frequency component, and a relatively low frequency component.




80. **"generating a transmitted magnetic field, based on the transmit signal, for transmission into the soil"**—The Magnetar 9000 has a search coil that includes a transmit coil and two receive coils. The transmit signal described above is applied to the transmit coil to produce a transmitted magnetic field. Nokta's marketing materials confirm that the coil is designed and intended to transmit that field into the soil.




Exhibit F, https://magnetar.noktadetectors.com/.

81. "**receiving a received magnetic field**"—The two receive coils of the Magnetar 9000 receive a magnetic field returned from the soil and from any target under inspection by the transmitted magnetic field.

82. "**producing a receive signal induced by the received magnetic field, the receive signal including relatively high frequency components, relatively medium frequency components, and relatively low frequency components; and**"—The Magnetar 9000 produces a receive signal induced by the received magnetic field. A frequency-domain analysis of the receive signal establishes that the receive signal contains relatively high, relatively medium, and relatively low frequency components.




83. “**processing the receive signal, the processing including selecting coefficients for, in effect, linearly combining the relatively high frequency components, the relatively low frequency components and the relatively medium frequency components of the receive signal**”—The Magnetar 9000 contains receive-signal processing circuitry that demodulates the receive signal using time-domain demodulation functions. Minelab has measured the Magnetar 9000’s demodulator control signals and confirmed that the measured signals are identical or at least substantially similar to the corresponding demodulator control signals of Minelab's GPZ 7000 that practices the ’770 Patent.

84. In the tested timing configuration, the Magnetar 9000’s time-domain demodulation functions implement the claimed selection of coefficients for, in effect, linearly

combining the relatively high, relatively low, and relatively medium frequency components of the receive signal. Narrow and early demodulation gates emphasize shorter-time, higher-frequency content of the receive signal, while later and/or longer gates correspond to progressively medium and lower-frequency content. The contributions obtained through these demodulation gates are combined with positive and negative weightings. Expressed in frequency-domain terms, this time-domain gating and weighting implements the selection of coefficients for, in effect, linearly combining the relatively high, relatively low, and relatively medium frequency components of the receive signal.

85. “**to produce an indicator output signal, the indicator output signal including a signal indicative of the presence of the target in the soil,**”—The Magnetar 9000 processes the receive signal using the linearly combined demodulation functions described above to produce an indicator output signal, including an audio output. For example, an audio output signal produced by the processed receive signal demonstrates variation caused by the Magnetar 9000 search coil moving across a target buried in soil, thereby indicating the presence of the target in the soil.



86. "**and wherein the coefficients are selected such that the indicator output signal is approximately independent of log-linear frequency-dependent resistive signal components and log-uniform resistive signal components from the soil**"—The Magnetar 9000 provides different ground modes for different soil conditions. Nokta describes the Regular ground mode as recommended for non-mineralized or low-mineral ground, and the Tough and Extreme ground modes as designed for very highly mineralized ground and to eliminate ground-related false signals. Exhibit H, Magnetar 9000 User Manual, p. 23. Minelab's comparative testing examined the Magnetar 9000's responses to two rocks having differing resistive responses that had been independently characterized in the frequency domain. In those tests, when operating in the Regular ground mode, the detector could be ground-balanced to either rock individually, but the setting that balanced one rock did not also balance the other. In contrast, when operating in the Extreme ground mode, the detector could be ground-balanced to either rock and remain balanced to the other without rebalancing between the rocks. The same ground-balance setting therefore suppressed the responses to both rocks despite their differing frequency-domain resistive responses. This contrast is consistent with the Regular ground mode suppressing log-uniform resistive soil components, whereas the Extreme ground mode additionally suppresses log-linear frequency-dependent resistive soil components. Considered together with the measured demodulation functions described above, these results support the conclusion that the coefficients selected when operating in the Extreme ground mode render the indicator output signal approximately independent of both log-linear frequency-dependent resistive signal components and log-uniform resistive signal components from the soil. The Magnetar 9000 provides selectable combinations of target modes and ground conditions, resulting in seven distinct demodulation function configurations. Minelab's technical

investigations have identified four of these configurations as implementing the soil-response cancellation processing claimed in the ’770 Patent, including configurations using the Extreme and Tough ground settings. The infringing configurations employ demodulation functions that select coefficients to render the indicator output signal approximately independent of both log-linear frequency-dependent resistive signal components and log-uniform resistive signal components from the soil. The comparative rock testing described above provides evidence of this processing in the tested Extreme configuration. The four accused configurations, comprising three configurations using Tough and one configuration using Extreme, are identified in Paragraph 87 below.

87. Minelab’s technical investigations have identified at least four combinations of target mode and ground setting of the Magnetar 9000 that implement the soil-response cancellation processing claimed in the ’770 Patent. These configurations, together with their corresponding Minelab GPZ 7000 settings, are identified below:

| Magnetar 9000 Mode | Magnetar 9000 Ground | Corresponding GPZ 7000 Settings |
|---|---|---|
| Max | Tough | High Yield / Difficult |
| Max | Extreme | High Yield / Severe |
| Standard | Tough | General / Difficult |
| Deep | Tough | Extra Deep / Difficult |

88. In each of the four identified configurations, the Magnetar 9000 employs demodulation functions that select coefficients to render the indicator output signal approximately independent of both log-linear frequency-dependent resistive signal components and log-uniform resistive signal components from the soil, as required by at least claim 1 of the ’770 Patent. The corresponding GPZ 7000 configurations implement the same claimed soil-response cancellation processing.

89. Claim 13 of the ’770 Patent recites “[a] metal detector configurable to perform the steps of” the method recited in claim 1. As described above, the Magnetar 9000 is configured to perform those steps in at least the four timing configurations identified in Paragraph 87. The availability of other selectable configurations does not alter the fact that the Magnetar 9000 is configurable to perform the claimed steps and therefore infringes claim 13.

90. Nokta therefore directly infringes the ’770 Patent under 35 U.S.C. § 271(a) at least as a result of offering to sell, and selling within the United States, and importing into the United States the Magnetar 9000.

91. American Detector has directly infringed and continues to directly infringe at least claims 1 and 13 of the ’770 Patent, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a), by one or more of using, offering to sell, and selling within the United States, and importing into the United States, the Magnetar 9000. *See, e.g.*, Exhibit G, https://detectornet.com/nokta/ (marketing Magnetar 9000).

92. Upon information and belief, American Detector acquires the Magnetar 9000 from Nokta and resells, offers to resell, and ships it to dealers and customers in the United States, including in Texas and in this District.

93. As set forth above, the Magnetar 9000 meets each and every limitation of at least claims 1 and 13 of the ’770 Patent, and American Detector’s sales, offers for sale, and importation of at least that product therefore infringe.

94. Minelab has complied with the marking requirements of 35 U.S.C. § 287(a) with respect to the ’770 Patent at all times relevant to this action. Minelab maintains a posting on the internet, accessible to the public without charge, that associates Minelab’s Patented Products with the number of the ’770 Patent. Minelab marks those patented articles, or their packaging,

with the word "patent" or the abbreviation "pat." together with the address of that patent marking web page. *See, e.g.*, Exhibit D, https://www.minelab.com/patents/.

95. Nokta and American Detector were therefore on notice of the '770 Patent at least by virtue of Minelab's virtual marking and patent marking web page.

96. At the latest, Nokta and American Detector were actually aware of the '770 Patent by the time of this action.

97. In view of Nokta's and American Detector's awareness of the '770 Patent and Minelab's infringement allegations against Nokta and American Detector as to the '770 Patent, Nokta's and American Detector's infringement has been and continues to be deliberate and willful, and thus Nokta and American Detector are liable for willful infringement as to the '770 Patent.

98. Pursuant to 35 U.S.C. § 284, Minelab is entitled to compensation for said infringements, including with respect to lost profits and in no event less than a reasonable royalty, for Nokta's and American Detector's direct infringement of the '770 Patent, together with pre- and post-judgment interest and costs as fixed by the Court.

99. Due to Nokta's and American Detector's willful infringement as alleged in this Count, Minelab is entitled to enhanced damages under 35 U.S.C. § 284.

**COUNT V: INDUCED INFRINGEMENT OF THE '770 PATENT**

100. Minelab realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

101. In addition, and in the alternative to Minelab's allegations of direct infringement, Nokta has induced and continues to induce infringement of at least claims 1 and 13 of the '770 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b).

102. The relevant direct infringement for purposes of this Count includes the direct

infringement committed by end users of the Magnetar 9000. When an end user switches on the Magnetar 9000, selects one of the four infringing combinations of target mode and ground setting identified in Paragraph 87, and operates the detector over ground to search for buried targets, the end user performs the steps recited in at least claim 1 of the ’770 Patent, literally and/or under the doctrine of equivalents. In such operation, the detector generates a transmit signal containing the three recited frequency components, generates a transmitted magnetic field into the soil, receives the returned magnetic field, produces a receive signal, and processes that signal by selecting coefficients that, in effect, linearly combine the relatively high, medium, and low frequency components to produce an indicator output signal approximately independent of the recited resistive soil components. Nokta’s United States distributors, dealers, and retailers likewise directly infringe claim 13 of the ’770 Patent by using, offering for sale, and selling the Magnetar 9000 in the United States. Their operation of the Magnetar 9000 in any of the four infringing timing configurations identified in Paragraph 87 also performs the steps of method claim 1.

103. As set forth in Count IV, the Magnetar 9000 is configured to perform the functions recited in at least claim 13 of the ’770 Patent. When operated in any of the four infringing timing configurations identified in Paragraph 87, the detector performs the steps recited in at least claim 1 of the ’770 Patent. Accordingly, operation of the Magnetar 9000 in those configurations in the United States constitutes direct infringement of claim 1, while the accused detector, as configured, infringes claim 13.

104. Nokta actively induces that direct infringement in a number of ways, including without limitation by one or more of the following acts: (i) Nokta manufactures the Magnetar 9000 and sells and offers it for sale to its United States distributors and dealers, knowing and

intending that the product will be resold to and used by customers in the United States; (ii) Nokta imports and distributes the Magnetar 9000 into the United States market; (iii) Nokta advertises and markets the Magnetar 9000 to United States consumers through its website and product literature, promoting its performance in mineralized ground—the very capability that the claimed soil-cancellation processing provides; (iv) Nokta directs United States consumers where to purchase the Magnetar 9000 through the "Where to Buy" or dealer-locator features of its website, with knowledge that such purchase and subsequent use in the United States will constitute direct infringement; and (v) Nokta supplies user manuals, quick-start guides, search-mode and ground-balance instructions, firmware, tutorial videos, and online support materials that instruct and encourage users to operate the Magnetar 9000 in the four infringing combinations of target mode and ground setting identified in Paragraph 87 (*see, e.g.*, Exhibit H, Magnetar 9000 User Manual, p. 23).

105. American Detector likewise actively induces and continues to actively induce that direct infringement, in violation of 35 U.S.C. § 271(b). Upon information and belief, American Detector: (i) sells and offers for sale the Magnetar 9000 to its network of United States dealers, knowing and intending that those dealers will resell the product to end users in the United States who will operate it in one or more of the four infringing timing configurations identified in Paragraph 87; (ii) informs the public where to purchase the Magnetar 9000 in the United States through the "Find a Dealer" feature of its website, with knowledge that such purchase and subsequent use in the United States will constitute direct infringement of the '770 Patent; and/or (iii) distributes and makes available Nokta's user manuals, quick-start guides, and search-mode and ground-balance instructions that instruct and encourage users to operate the Magnetar 9000 in the infringing timing configurations identified in Paragraph 87. Despite its knowledge of the

’770 Patent, American Detector continues to induce its dealers, end users, and others to use, sell, and offer for sale the Magnetar 9000 in the United States. In the alternative, American Detector has been willfully blind to the infringement it induces.

106. Minelab has complied with the marking requirements of 35 U.S.C. § 287(a) with respect to the ’770 Patent at all times relevant to this action. Minelab maintains a posting on the internet, accessible to the public without charge, that associates Minelab’s Patented Products with the number of the ’770 Patent. Minelab marks those patented articles, or their packaging, with the word “patent” or the abbreviation “pat.” together with the address of that patent marking web page. *See, e.g.*, Exhibit D, https://www.minelab.com/patents/.

107. Nokta and American Detector were therefore on notice of the ’770 Patent at least by virtue of Minelab’s virtual marking and patent marking web page.

108. At the latest, Nokta and American Detector were actually aware of the ’770 Patent by the time of this action.

109. Nokta has therefore known of the ’770 Patent since no later than the filing of this Complaint. Since that date, Nokta has known or should have known that the acts it induces its distributors, dealers, and customers to perform constitute infringement of the ’770 Patent. Nokta has nevertheless continued, and continues, to perform the inducing acts described above with the specific intent that its distributors, dealers, and customers infringe the ’770 Patent, and with knowledge that their acts constitute infringement. In the alternative, Nokta has been willfully blind to the infringement it induces.

110. American Detector has likewise known of the ’770 Patent since no later than the filing of this Complaint. Since that date, American Detector has known or should have known that the acts it induces its dealers, end users, and others to perform constitute infringement of the

’770 Patent. American Detector has nevertheless continued, and continues, to perform the inducing acts described above with the specific intent that its dealers, end users, and others infringe the ’770 Patent, and with knowledge that their acts constitute infringement. In the alternative, American Detector has been willfully blind to the infringement it induces.

111. Pursuant to 35 U.S.C. § 284, Minelab is entitled to compensation for said infringements, including with respect to lost profits and in no event less than a reasonable royalty, for Nokta’s and American Detector’s induced infringement of the ’770 Patent, together with pre- and post-judgment interest and costs as fixed by the Court.

112. Due to Nokta’s and American Detector’s willful infringement as alleged in this Count, Minelab is entitled to enhanced damages under 35 U.S.C. § 284.

**COUNT VI: CONTRIBUTORY INFRINGEMENT OF THE ’770 PATENT**

113. Minelab realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

114. In addition, and in the alternative to Minelab’s allegations of direct and induced infringement, Nokta has contributorily infringed and continues to contributorily infringe at least claims 1 and 13 of the ’770 Patent in violation of 35 U.S.C. § 271(c).

115. Upon information and belief, Nokta offers to sell and sells within the United States, and imports into the United States, the Magnetar 9000 together with its transmit and receive coil assembly, its transmit electronics, and its receive and signal-processing electronics, including the synchronous demodulators, demodulator control circuitry, and processor and firmware that implement the accused demodulation functions. Each of those items constitutes a material or apparatus for use in practicing the patented process and/or apparatus of the ’770 Patent, and a component of a patented machine or combination, constituting a material part of the claimed invention.

116. Nokta knowingly and intentionally advertises and sells the Magnetar 9000 and its components to its distributors, dealers, and customers with the expectation and intention that those parties will operate the detector so as to practice the recited steps and/or functions of at least claims 1 and 13 of the ’770 Patent.

117. Upon information and belief, American Detector knowingly and intentionally advertises and sells the Magnetar 9000 and its components to its dealers and customers with the expectation and intention that those parties will sell the detectors to end users who will operate those detectors so as to practice the recited steps and/or functions of at least claims 1 and 13 of the ’770 Patent.

118. Upon information and belief, the particular demodulation circuitry and control logic responsible for implementing the claimed soil-response cancellation processing are especially made or adapted for use in infringement of the ’770 Patent. These components implement the claimed processing when the Magnetar 9000 is operated in any of the four infringing timing configurations identified in Paragraph 87. These components are not staple articles or commodities of commerce suitable for substantial non-infringing use.

119. Minelab has complied with the marking requirements of 35 U.S.C. § 287(a) with respect to the ’770 Patent at all times relevant to this action. Minelab maintains a posting on the internet, accessible to the public without charge, that associates Minelab’s Patented Products with the number of the ’770 Patent. Minelab marks those patented articles, or their packaging, with the word “patent” or the abbreviation “pat.” together with the address of that patent marking web page. *See, e.g.*, Exhibit D, https://www.minelab.com/patents/.

120. Nokta and American Detector were therefore on notice of the ’770 Patent at least by virtue of Minelab’s virtual marking and patent marking web page.

121. At the latest, Nokta and American Detector were actually aware of the ’770 Patent by the time of this action.

122. Nokta and American Detector have therefore known since no later than the filing of this Complaint that the accused components are especially made or especially adapted for use in an infringement of the ’770 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use. The activities of each of Nokta and American Detector in infringing the ’770 Patent are thus willful and wanton.

123. Pursuant to 35 U.S.C. § 284, Minelab is entitled to compensation for said infringements, including with respect to lost profits and in no event less than a reasonable royalty, for Nokta’s and American Detector’s contributory infringement of the ’770 Patent, together with pre- and post-judgment interest and costs as fixed by the Court.

124. Due to Nokta’s and American Detector’s willful infringement as alleged in this Count, Minelab is entitled to enhanced damages under 35 U.S.C. § 284.

**COUNT VII: DIRECT INFRINGEMENT OF THE ’065 PATENT**

125. Minelab realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

126. Nokta has infringed and continues to infringe at least claims 1 and 8 of the ’065 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by making, using, offering to sell, and selling within the United States, and importing into the United States, the Magnetar 9000, without authority from Minelab.

127. Claim 1 of the ’065 Patent recites a method for reducing a minimum delay between the end of a transition from a high voltage to a low voltage of a transmit signal of a metal detector and the beginning of a demodulation of a receive signal received by a receive coil. Nokta directly infringes by making, using, offering for sale, selling, and importing the Magnetar

9000, which contains a circuit configured to perform, and which performs, each step of the claimed method as shown in the following paragraphs.

128. "**A method for reducing a minimum delay, between (a) an end of a transition from a high voltage to a low voltage of a transmit signal of a metal detector and (b) a beginning of a demodulation, following the end of the transition, of a receive signal received by a receive coil of the metal detector, the minimum delay limited by a time constant of the receive coil when the receive coil is critically damped**"—An oscilloscope trace of the transmit signal, the receive-coil signal, and the demodulation signal of the Magnetar 9000 demonstrates the end of a transition from a high voltage to a low voltage of the transmit signal, the beginning of demodulation of the receive signal, and an intervening delay between the end of the transition of the transmit signal and the beginning of demodulation.

129. In the Magnetar 9000, as in the detectors described in the '065 Patent, that delay is limited by the critically damped time constant of the receive coil. The receive-coil voltage must decay sufficiently from the residual voltage induced during the transmit period before demodulation can begin to avoid overloading the preamplifier and contaminating the signals with reactive voltage from the soil. The relevant minimum delay is therefore associated with the decay time constant of the receive coil when critically damped.

130. "**connecting a negative capacitance generator to the receive coil to introduce a negative capacitance to the receive coil**"—Upon information and belief, the Magnetar 9000 contains a negative capacitance generator (NCG) connected to its receive coil. Minelab has conducted a detailed examination and performed reverse engineering of the Magnetar 9000 preamplifier circuitry, including physical inspection, electrical measurements, circuit reconstruction, and simulation. These investigations have identified circuitry implementing a

negative capacitance generator having substantially the same functional architecture as that described in the ’065 Patent. The reconstructed circuit and its simulated characteristics are consistent with the measured electrical behavior of the Magnetar 9000, including the introduction of an effective negative capacitance at the receive-coil input.

131. Consequently, the input impedance of the Magnetar 9000 preamplifier, which is connected to the receive coil, exhibits an effective negative capacitance. As further discussed below, the Magnetar 9000 preamplifier input presents a negative effective capacitance over a lower-frequency range (*e.g.*, for frequencies below approximately 4 MHz). A negative effective capacitance of that kind does not arise naturally from passive circuit elements; rather, it indicates the presence of an active negative-capacitance function connected to the receive input. Because the preamplifier input is connected directly to the receive coil, the receive coil of the Magnetar 9000 is thereby presented with an effective negative capacitance.

132. “**to reduce the time constant of the receive coil when the receive coil is critically damped**”—The negative capacitance introduced in the Magnetar 9000 reduces the critically damped time constant of its receive coil. As shown in the oscilloscope trace below, the receive-coil signal decays with a shorter time constant and earlier with the NCG (blue trace) than without the NCG (yellow trace). Absent the introduced negative capacitance, the receive-coil decay would be substantially the same as that comparison decay. The reduced decay time permits the Magnetar 9000 to begin demodulation sooner after a transmit transition, and so to detect targets having shorter eddy-current time constants.




133. "**and reducing an amount of a positive feedback of the negative capacitance generator at frequencies higher than the resonant frequency of the receive coil**"—In a canonical, uncompensated negative-capacitance circuit, positive feedback is supplied through a feedback capacitor and tends to increase with frequency as that capacitor's reactance decreases, such that the circuit maintains its negative input capacitance across frequency. Reducing the positive feedback at higher frequencies would cause the negative input capacitance to move in the positive direction. The effective input capacitance of the Magnetar 9000, as measured by the Magnetar 9000 preamplifier input capacitance across frequency, shows an approximately constant negative capacitance at lower frequencies, followed by a transition in which the negative capacitance tapers, becomes less negative, and ultimately moves toward positive capacitance. This behavior thus indicates a reduction in positive feedback of the negative capacitance generator. This conclusion is further supported by Minelab's reverse-engineering investigation, which identified a circuit arrangement whose simulated and measured frequency-

dependent characteristics are consistent with the measured effective input capacitance of the Magnetar 9000.

134. That reduction in positive feedback occurs at frequencies higher than the resonant frequency of the Magnetar 9000 receive coil. The measured transition in effective input capacitance starts at approximately 6 MHz, while the measured resonance of the Magnetar 9000 receive coil is at approximately 500 kHz. The reduction in positive feedback therefore occurs well above the receive-coil resonant frequency.




135. **"to compensate for distributed inductances and capacitances of the receive coil"**— The Magnetar 9000 receive-coil impedance exhibits high-frequency characteristics consistent with the distributed inductances and capacitances of the physical receive coil. Minelab's measurements and reverse-engineering investigations further establish that the accused negative-capacitance circuitry reduces its positive-feedback effect at frequencies above the receive-coil resonance. This behavior is consistent with compensation for the distributed

inductances and capacitances of the receive coil, as required by method claim 1.

136. Claim 8 of the ’065 Patent is an apparatus counterpart to method claim 1 and recites:

> 8. A metal detector including a circuit capable of reducing a minimum delay, between (a) an end of a transition from a high voltage to a low voltage of a transmit signal of the metal detector and (b) a beginning of a demodulation, following the end of the transition, of a receive signal received by a receive coil of the metal detector, the minimum delay limited by a time constant of the receive coil when the receive coil is critically damped, the metal detector including:
>
> a negative capacitance generator connected to the receive coil to introduce a negative capacitance to the receive coil to reduce the time constant of the receive coil when the receive coil is critically damped; and
>
> a circuit for reducing an amount of a positive feedback of the negative capacitance generator at frequencies higher than the resonant frequency of the receive coil to compensate for the distributed inductances and capacitances of the receive coil.

137. The elements of claim 8 are thus substantively similar to those of claim 1, differing namely in that claim 8 recites “[a] metal detector including a circuit capable of reducing a minimum delay” and “a circuit for reducing an amount of a positive feedback.” As described above, the Magnetar 9000 is a metal detector that, upon information and belief, includes such circuits that implement the functions recited in claim 8.

138. In practical terms, the negative-capacitance circuitry reduces the time required for the Magnetar 9000's receive-coil signal to settle after transmission, allowing the detector to begin processing received signals earlier. This improves its ability to detect targets that produce rapidly decaying signals, particularly small gold nuggets and other small or low-conductivity metal targets, whose signals might otherwise decay before detection begins. The Magnetar 9000 thereby obtains the benefit of the technology claimed in the ’065 Patent.

139. Nokta therefore directly infringes the ’065 Patent under 35 U.S.C. § 271(a) at least as a result of offering to sell, and selling within the United States, and importing into the

United States the Magnetar 9000.

140. American Detector has directly infringed and continues to directly infringe at least claims 1 and 8 of the ’065 Patent, literally and/or under the doctrine of equivalents, under 35 U.S.C. § 271(a), by using, offering to sell, and selling within the United States, and importing into the United States, the Magnetar 9000. *See, e.g.*, Exhibit G, https://detectornet.com/nokta/ (marketing Magnetar 9000).

141. Upon information and belief, American Detector acquires the Magnetar 9000 from Nokta and resells, offers to resell, and ships it to dealers and customers in the United States, including in Texas and in this District.

142. As set forth above, the Magnetar 9000 meets each and every limitation of at least claims 1 and 8 of the ’065 Patent, and American Detector’s sales, offers for sale, and importation of at least that product therefore infringe.

143. Minelab has complied with the marking requirements of 35 U.S.C. § 287(a) with respect to the ’065 Patent at all times relevant to this action. Minelab maintains a posting on the internet, accessible to the public without charge, that associates Minelab’s Patented Products with the number of the ’065 Patent. Minelab marks those patented articles, or their packaging, with the word “patent” or the abbreviation “pat.” together with the address of that patent marking web page. *See, e.g.*, Exhibit D, https://www.minelab.com/patents/.

144. Nokta and American Detector were therefore on notice of the ’065 Patent at least by virtue of Minelab’s virtual marking and patent marking web page.

145. Alternatively, or in addition to Nokta’s constructive awareness of the ’065 Patent due to Minelab’s virtual marking and patent marking web page, Nokta was actually aware of the ’065 Patent prior to this action based on communications with Minelab.

146. At the latest, Nokta and American Detector were actually aware of the ’065 Patent by the time of this action.

147. In view of Nokta’s and American Detector’s awareness of the ’065 Patent and Minelab’s infringement allegations against Nokta and American Detector as to the ’065 Patent, Nokta’s and American Detector’s infringement has been and continues to be deliberate and willful, and thus Nokta and American Detector are liable for willful infringement as to the ’065 Patent.

148. Pursuant to 35 U.S.C. § 284, Minelab is entitled to compensation for said infringements, including with respect to lost profits and in no event less than a reasonable royalty, for Nokta’s and American Detector’s direct infringement of the ’065 Patent, together with pre- and post-judgment interest and costs as fixed by the Court.

149. Due to Nokta’s and American Detector’s willful infringement as alleged in this Count, Minelab is entitled to enhanced damages under 35 U.S.C. § 284.

**COUNT VIII: INDUCED INFRINGEMENT OF THE ’065 PATENT**

150. Minelab realleges and incorporates by reference the preceding paragraphs as if fully set forth herein.

151. In addition, and in the alternative to Minelab’s allegations of direct infringement, Nokta has induced and continues to induce infringement of at least claims 1 and 8 of the ’065 Patent, literally and/or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(b).

152. The relevant direct infringement for purposes of this Count is the direct infringement committed by others, including the end users of the Magnetar 9000. When an end user switches on and operates the Magnetar 9000 to search for buried targets, the detector transmits, receives, and demodulates in the manner described in Count VII, and the Magnetar 9000 thereby performs the recited steps and/or functions of at least claims 1 and 8 of the ’065

Patent, literally and/or under the doctrine of equivalents, including connecting the negative capacitance generator to the receive coil to reduce the critically damped time constant and reducing the positive feedback of that generator above the receive-coil resonant frequency.

153. Nokta's United States distributors, dealers, and retailers likewise directly infringe by using, offering for sale, and selling the Magnetar 9000 in the United States.

154. As set forth in Count VII, the Magnetar 9000 meets each and every limitation of at least claims 1 and 8 of the '065 Patent, literally and/or under the doctrine of equivalents, and is therefore infringing in its ordinary and intended operation.

155. Nokta actively induces that direct infringement in a number of ways, including without limitation by one or more of the following acts: (i) Nokta manufactures the Magnetar 9000 and sells and offers it for sale to its United States distributors and dealers, knowing and intending that the product will be resold to and used by customers in the United States; (ii) Nokta imports and distributes the Magnetar 9000 into the United States market; (iii) Nokta advertises and markets the Magnetar 9000 to United States consumers through its website and product literature, promoting its sensitivity to small and low-conductivity targets—the very capability that the claimed reduction in demodulation delay provides; (iv) Nokta directs United States consumers where to purchase the Magnetar 9000 through the "Where to Buy" or dealer-locator features of its website, with knowledge that such purchase and subsequent use in the United States will constitute direct infringement; and (v) Nokta supplies user manuals, quick-start guides, firmware, tutorial videos, and online support materials that instruct and encourage users to operate the Magnetar 9000 in the accused, infringing manner.

156. American Detector likewise actively induces and continues to actively induce that direct infringement, in violation of 35 U.S.C. § 271(b). Upon information and belief, American

Detector: (i) sells and offers for sale the Magnetar 9000 to its network of United States dealers, knowing and intending that those dealers will resell the product to end users in the United States who will operate it in the infringing manner; (ii) informs the public where to purchase the Magnetar 9000 in the United States through the "Find a Dealer" feature of its website, with knowledge that such purchase and subsequent use in the United States will constitute direct infringement of the '065 Patent; and/or (iii) distributes and makes available Nokta's user manuals, quick-start guides, firmware, and online support materials that instruct and encourage users to operate the Magnetar 9000 in the accused, infringing manner. Despite its knowledge of the '065 Patent, American Detector continues to induce its dealers, end users, and others to use, sell, and offer for sale the Magnetar 9000 in the United States. In the alternative, American Detector has been willfully blind to the infringement it induces.

157. Minelab has complied with the marking requirements of 35 U.S.C. § 287(a) with respect to the '065 Patent at all times relevant to this action. Minelab maintains a posting on the internet, accessible to the public without charge, that associates Minelab's Patented Products with the number of the '065 Patent. Minelab marks those patented articles, or their packaging, with the word "patent" or the abbreviation "pat." together with the address of that patent marking web page. *See, e.g.*, Exhibit D, https://www.minelab.com/patents/.

158. Nokta and American Detector were therefore on notice of the '065 Patent at least by virtue of Minelab's virtual marking and patent marking web page.

159. Alternatively, or in addition to Nokta's constructive awareness of the '065 Patent due to Minelab's virtual marking and patent marking web page, Nokta was actually aware of the '065 Patent prior to this action based on communications with Minelab.

160. At the latest, Nokta and American Detector were actually aware of the ’065 Patent by the time of this action.

161. Nokta has therefore known of the ’065 Patent since no later than the filing of this Complaint. Since that date, Nokta has known or should have known that the acts it induces its distributors, dealers, and customers to perform constitute infringement of the ’065 Patent. Nokta has nevertheless continued, and continues, to perform the inducing acts described above with the specific intent that its distributors, dealers, and customers infringe the ’065 Patent, and with knowledge that their acts constitute infringement. In the alternative, Nokta has been willfully blind to the infringement it induces.

162. American Detector has likewise known of the ’065 Patent since no later than the filing of this Complaint. Since that date, American Detector has known or should have known that the acts it induces its dealers, end users, and others to perform constitute infringement of the ’065 Patent. American Detector has nevertheless continued, and continues, to perform the inducing acts described above with the specific intent that its dealers, end users, and others infringe the ’065 Patent, and with knowledge that their acts constitute infringement. In the alternative, American Detector has been willfully blind to the infringement it induces.

163. Pursuant to 35 U.S.C. § 284, Minelab is entitled to compensation for said infringements, including with respect to lost profits and in no event less than a reasonable royalty, for Nokta’s and American Detector’s induced infringement of the ’065 Patent, together with pre- and post-judgment interest and costs as fixed by the Court.

164. Due to Nokta’s and American Detector’s willful infringement as alleged in this Count, Minelab is entitled to enhanced damages under 35 U.S.C. § 284.

**COUNT IX: CONTRIBUTORY INFRINGEMENT OF THE ’065 PATENT**

165. Minelab realleges and incorporates by reference the preceding paragraphs as if

fully set forth herein.

166. In addition, and in the alternative to Minelab's allegations of direct and induced infringement, Nokta has contributorily infringed and continues to contributorily infringe at least claims 1 and 8 of the '065 Patent in violation of 35 U.S.C. § 271(c).

167. Upon information and belief, Nokta offers to sell and sells within the United States, and imports into the United States, the Magnetar 9000 together with its receive coil, its receive preamplifier, its negative capacitance generator, and the positive-feedback compensation network that reduces the positive feedback of that generator at frequencies above the receive-coil resonant frequency. Each of those items constitutes a material or apparatus for use in practicing the patented process of the '065 Patent, and a component of a patented machine or combination, constituting a material part of the claimed invention.

168. Nokta knowingly and intentionally advertises and sells the Magnetar 9000 and its components to its distributors, dealers, and customers with the expectation and intention that those parties will operate the detector so as to practice the steps and/or functions of at least claims 1 and 8 of the '065 Patent.

169. The accused components are not staple articles or commodities of commerce suitable for substantial non-infringing use. The negative capacitance generator of the Magnetar 9000 and its associated high-frequency positive-feedback compensation network are especially made and especially adapted for use in an infringement of the '065 Patent. Their only function is to present a negative capacitance to the receive coil so as to shorten its critically damped time constant, and to taper that effect above the coil's resonant frequency. That is, their only function is to perform the claimed method and functions. They have no substantial use apart from the infringing receive architecture of the detector, and the detector cannot be operated to detect

targets without performing the claimed steps and functions.

170. American Detector likewise has contributorily infringed and continues to contributorily infringe at least claims 1 and 8 of the ’065 Patent in violation of 35 U.S.C. § 271(c). Upon information and belief, American Detector offers to sell and sells within the United States the Magnetar 9000 together with its receive coil, receive preamplifier, negative capacitance generator, and positive-feedback compensation network, knowing those items to be especially made or especially adapted for use in an infringement of the ’065 Patent and not to be staple articles or commodities of commerce suitable for substantial non-infringing use.

171. Minelab has complied with the marking requirements of 35 U.S.C. § 287(a) with respect to the ’065 Patent at all times relevant to this action. Minelab maintains a posting on the internet, accessible to the public without charge, that associates Minelab’s Patented Products with the number of the ’065 Patent. Minelab marks those patented articles, or their packaging, with the word “patent” or the abbreviation “pat.” together with the address of that patent marking web page. *See, e.g.*, Exhibit D, https://www.minelab.com/patents/.

172. Nokta and American Detector were therefore on notice of the ’065 Patent at least by virtue of Minelab’s virtual marking and patent marking web page.

173. Alternatively, or in addition to Nokta’s constructive awareness of the ’065 Patent due to Minelab’s virtual marking and patent marking web page, Nokta was actually aware of the ’065 Patent prior to this action based on communications with Minelab.

174. At the latest, Nokta and American Detector were actually aware of the ’065 Patent by the time of this action.

175. Nokta and American Detector have therefore known since no later than the filing of this Complaint that the accused components are especially made or especially adapted for use

in an infringement of the ’065 Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use. The activities of each of Nokta and American Detector in infringing the ’065 Patent are thus willful and wanton.

176. Pursuant to 35 U.S.C. § 284, Minelab is entitled to compensation for said infringements, including with respect to lost profits and in no event less than a reasonable royalty, for Nokta’s and American Detector’s contributory infringement of the ’065 Patent, together with pre- and post-judgment interest and costs as fixed by the Court.

177. Due to Nokta’s and American Detector’s willful infringement as alleged in this Count, Minelab is entitled to enhanced damages under 35 U.S.C. § 284.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Minelab hereby demands a trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Minelab Electronics Pty Ltd respectfully requests that this Court enter judgment in its favor and against Defendants Nokta Muhendislik AS and American Detector Distributors as follows:

a. Declaring that Nokta and American Detector have each infringed, directly and indirectly, one or more claims of each of U.S. Patent Nos. 8,106,770, 9,547,065, and 11,953,642;

b. Declaring that Nokta’s and American Detector’s infringement has been and is willful;

c. Permanently enjoining Nokta and American Detector, together with their officers, directors, agents, servants, employees, affiliates, divisions, branches, subsidiaries, parents, distributors, dealers, and all others acting in concert or participation with

any of them, from further infringement of U.S. Patent Nos. 8,106,770, 9,547,065, and 11,953,642 during the respective terms thereof;

d. Awarding Minelab its damages arising out of Nokta's and American Detector's infringement of U.S. Patent Nos. 8,106,770, 9,547,065, and 11,953,642, including pre- and post-judgment interest;

e. Awarding attorneys' fees, costs, or other damages pursuant to 35 U.S.C. §§ 284 and/or 285 or as otherwise permitted by law, against Nokta and American Detector; and

f. Granting Minelab such other and further relief as the Court may deem just and proper.

Dated: October 29, 2026

Respectfully submitted,

**JACKSON WALKER LLP**

*/s/ Wasif Qureshi*

Wasif H. Qureshi
Texas Bar No. 24048155
wqureshi@jw.com
Harris J. Huguenard
Texas Bar No. 24099615
hhuguenard@jw.com
Victoria C. Emery
Texas Bar No. 24126228
temery@jw.com
1401 McKinney, Suite 1900
Houston, Texas 77010
Telephone: (713) 752-4200

Blake T. Dietrich
Texas Bar No. 24087420
bdietrich@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
Telephone: (214) 953-6000

Paige V. Welch
Texas Bar No. 24138184
pwelch@jw.com
100 Congress Avenue, Suite 1100
Austin, TX 78701
Telephone: (512) 236-2000

*Counsel for Minelab Electronics Pty Ltd*